UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHARLES W.,[1]

    **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 1:21-cv-1624
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Charles W. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.  **PROCEDURAL HISTORY**

Plaintiff protectively filed his applications for benefits on November 14, 2014, and December 2, 2014, alleging that he has been disabled since September 10, 2014. R. 127–28, 139, 166–67, 351–67. The applications were denied initially and upon reconsideration. R. 192–201, 207–12. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 213–14. Administrative Law Judge Marguerite Toland ("ALJ") held a hearing on April 3, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 88–116. In a decision dated April 16, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 10, 2014, Plaintiff's alleged disability onset date, through the date of that decision. R. 168–83 ("2018 decision"). On July 8, 2019, the Appeals Council vacated that decision and remanded the matter to the ALJ for resolution of the following issues:

- The Administrative Law Judge's residual functional capacity assessment requires clarification regarding whether a cane is medically necessary for the claimant to ambulate effectively. The Administrative Law Judge found the claimant "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: he cannot climb ropes, ladders, or scaffolds; he cannot work at heights; he cannot operate dangerous machinery (defined as machines that cut or shear); can only occasionally climb ramps and stairs; can only occasionally stoop; he can never crawl; he can stand or walk up to 6 hours per day but no more than 1 hour at a time and then would need to sit or shift position for 5 minutes every hour while remaining on task; and he will need to be off task 5% of the workday." However, the medical record indicates a cane was prescribed for the claimant in March of 2017 and a May 2017 treatment record indicates the claimant indicates he "needs to use a cane at all times due to chronic spasm" and the prescribing doctor indicates physical exam was notable for decreased lumbar range of motion and paraspinal muscle spasm (Exhibit 13F). Although the decision mentions use of a cane, it assigns significant weight to the January 8, 2015 opinion of Juan Carlos Cornejo, M.D. that the claimant would not require a cane for ambulation, and does not address the later prescription or later physical exams in the record. Further clarification of whether the claimant needs an assistive

- device; and, if the claimant does require an assistive device, clarification of the type of device needed is required.

- The hearing decision does not contain an adequate evaluation of the claimant's obesity. The record reflects that the claimant is morbidly obese (Height 6', weight 243 pounds, which results in a body mass index (BMI) of 32.95) (Exhibit 1E). Specifically, the claimant is alleging disability in part due to pain that could have been significantly aggravated by this condition. Further evaluation of the claimant's obesity is required.

- The Administrative Law Judge did not discuss or weigh the third party statements from the claimant's sister, son, and spouse (Exhibits 14E, 15E, 16E). Social Security Ruling 06-3p addresses the consideration of opinions and other evidence from sources who are not "acceptable medical sources," such as friends and family members. Social Security Ruling 06-3p states that information from "other sources," "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Upon remand, third party statements must be considered and weighed consistent with Social Security Ruling 06-3p.

R. 186–87. The Appeals Council further directed the ALJ to

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512 and 416.912). The additional evidence may include, if warranted and available, consultative examinations and medical source opinions about what the claimant can still do despite the impairments.

- Evaluate the claimant's obesity pursuant to Social Security Ruling 19-2p.

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and nonexamining source opinions in accordance with the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and

> cooperation of the claimant's representative in developing evidence from the claimant's treating sources.
>
> - Further, if necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments (20 CFR 404.1513a(b)(2) and 416.913a(b)(2)).
>
> - If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 96-9p), and to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

R. 187–88. Finally, the Appeals Council ordered, "In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision." R. 188.

Following remand, the ALJ held another hearing on March 6, 2020, at which Plaintiff, who was again represented by counsel, testified, as did a vocational expert. R. 54–87. In a decision dated July 1, 2020, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 10, 2014, Plaintiff's alleged disability onset date, through the date of that decision. R. 31–53 ("2020 decision"). That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 15, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 14, 2021, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.³ On June 16, 2021, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by sutantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

---

³The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

5

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

  **B.**  **Sequential Evaluation Process**

  The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

  At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

  At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not

have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ's 2020 DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on his alleged disability onset date. R. 117, 129, 140, 153. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 10, 2014, his alleged disability onset date, and December 31, 2018. R. 36. Plaintiff did return to substantial gainful activity beginning on January 1, 2019. R. 36–37.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease with radiculopathy; cervical degenerative disc disease with radiculopathy; chronic pain syndrome; bilateral hip osteoarthritis; and obesity. R. 37. The ALJ also found that Plaintiff's diagnosed hypertension and sleep apnea and alleged respiratory and anxiety symptoms were not severe impairments. R. 37–38.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 38–39.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 39–45. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a chauffeur. R. 44–45. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 10, 2014, his alleged disability onset date, through the date of the decision. R. 45.

Plaintiff disagrees with the ALJ's findings at steps two, three, and four, and challenges the constitutionality of the appointment of the Commissioner; he asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 20. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17.

IV. **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On May 25, 2017, Plaintiff presented to his treating physician, Eric Kruger, M.D., to

discuss "back issues and meds." R. 1000. Under the heading "History of Present Illness[,]" Dr. Kruger noted, *inter alia*, as follows: "LOWER BACK PAIN-He needs to use a cane at times due to chronic spasm and persistent. Seeing Pain Management. Would like a 2nd opinion." *Id*. Under the heading "Review of Systems[,]" Dr. Kruger further noted, *inter alia*, the following: "Musculoskeletal: Chronic lower back pain. See HPI [History of Present Illness]. Unable to stand erect without worsening muscle spasm. Using cane support helps with ambulation." *Id*. Upon physical examination, Dr. Kruger reported, among other things, the following: "Musculoskeletal: Decreased ROM of lumbar spine with paraspinal muscle spasm." R. 1001. Dr. Kruger's assessment/plan included the following: "Chronic back pain[.] 2nd opinion from Dr. O'Brien. Cane provided for gait support." *Id*. On that same day, Dr. Kruger wrote a prescription for a cane with the following notation: "Sx: R26.9  M54.9[.]"[4] R. 1003.

---

[4] "Sx" refers to "symptoms". *See Burton v. Kijakazi*, No. 20-196, 2022 WL 125368, at *2 (W.D. Pa. Jan. 13, 2022) ("'Sx's' is a notation often used to refer to 'symptoms.'"). "R26.9" refers to a diagnostic code from the International Classification of Diseases and Related Health Problems, Clinical Modification ("ICD-10-CM"), which addresses "[u]nspecified abnormalities of gait and mobility[.]" *See* CDC, National Center for Health Statistics-ICD-10-CM, https://icd10cmtool.cdc.gov/?fy=FY2023&query=R26 (last visited May 11, 2023); *see also James F. v. Kijakazi*, No. CV 22-230JJM, 2023 WL 3223790, at *4 (D.R.I. May 3, 2023) ("'ICD' or 'International Classification of Disease" is a coding system adopted by the United States Department of Health and Human Services to classify 'diseases, injuries, health encounters and inpatient procedures in morbidity settings.' https://www.cdc.gov/nchs/icd/icd10cm_pcs_background.htm. Pursuant to the Social Security Program Operations Manual System, the coding used for the disability determination explanation form is 'based on a simplified version of the International Classification of Diseases (ICD) full code.'") (quoting POMS, DI 26510.015(B)). "M54.9" is the ICD-10-CM diagnostic code for "Dorsalgia, unspecified[.]" CDC, National Center for Health Statistics-ICD-10-CM, https://icd10cmtool.cdc.gov/?fy=FY2023&query=M54.9 (last visited May 11, 2023); *see also Alfredia P. v. Saul*, No. 20 C 300, 2022 WL 4604213, at *5 (N.D. Ill. Sept. 30, 2022) (noting, *inter alia*, that "back pain [is] also referred to as dorsalgia").

V.  DISCUSSION

Plaintiff advances a number of challenges to the ALJ's decision, including to the RFC determination, arguing that the ALJ failed to properly consider the impact of Plaintiff's use of a cane. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 14–15; *Plaintiff's Reply Brief*, ECF No. 20, pp. 2–3.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation {that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform "light work except that he cannot climb ropes, ladders or scaffolds or work at heights. He can only occasionally climb ramps and stairs. He can only occasionally stoop. He can never

crawl[.]" R. 39. In making this determination, the ALJ explained that Plaintiff's use of a cane was not medically necessary:

> There is no indication in the record that he uses a medically necessary cane. The only mention of cane usage was in Dr. Kruger's notes at Exhibit 13F [R. 987–1014]. That physician stated that a cane helped the claimant's ambulation, but he did [sic] state that a cane was medically necessary for the claimant to ambulate. The contention that the claimant requires a cane is not supported by a record showing that the claimant had consistently tested as having a normal gait. His medical records show that the claimant only mentioned once he only uses a cane, when he is in a high degree of pain. This statement indicates that this assistive device is not medically necessary, since it is only used on an as needed basis. Again, his physical examinations repeatedly show that he has tested as having a normal gait *and there is no mention of a prescription for a medically necessary cane in the record.* Therefore, it is unclear why the claimant would need a cane to ambulate since his pain was often stable and he has persistently tested as having a normal gait.

R. 43 (emphasis added).

Plaintiff challenges this finding, arguing that the ALJ erred in saying that there was no prescription for a cane when, in fact, Dr. Kruger, Plaintiff's treating physician, had prescribed a cane in May 2017 due to persistent and chronic spasms. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 14–15. Plaintiff contends that this evidence, along with his hearing testimony that he uses his cane on a daily basis, supports the use of his cane. *Id*.

For her part, the Acting Commissioner concedes that the ALJ mistakenly indicated that there was no prescription for a cane, but she argues that any error in this regard was harmless. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17, pp. 25, 26 n.6. The Acting Commissioner contends that the ALJ must consider whether an assistive device is "medically required," and that a prescription for such a device, standing alone, does not satisfy this standard. *Id*. (citing, *inter alia*, *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002); SSR 96-9p). The Acting Commissioner further argues that "[b]ecause no physician opined that a cane was

13

medically required and described the circumstances in which it would be needed, the ALJ reasonably excluded use of a cane from the RFC assessment." *Id*. at 27 (citations omitted).

In reply, Plaintiff insists that the ALJ's error in finding no prescription for a cane was not harmless. *Plaintiff's Reply Brief*, ECF No. 20, pp. 2–3. Plaintiff also argues that this was not a case where there was simply a prescription alone with no discussion of the cane's necessity. *Id*. at 3 (citations omitted). Rather, Plaintiff argues, Dr. Kruger explained that Plaintiff needed to use a cane due to chronic and persistent spasms. *Id*. (citations omitted).

The Court is not persuaded that the ALJ's error in stating that there was no prescription for a cane is harmless. "ALJ need not account for use of a hand-held assistive device in an RFC assessment unless that device is medically required." *Mundo v. Kijakazi*, No. 1:21-CV-517, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023). SSR 96-9p addresses the need to find that such a device is "medically required":

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)*. The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand,

> the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) (emphasis added). "A claimant's testimony that a cane has been prescribed is not enough to meet this burden." *Mundo*, 2023 WL 2632810, at *5 (citations omitted). Similarly, a prescription for an assistive device with "no discussion of its medical necessity" is "insufficient to support a finding that [an assistive device] was medically necessary." *Howze*, 53 F. Appx at 222 ("Other than that [a prescription and a checked box that an assistive device was required for ambulation], there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary."). "However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly 'address the evidence concerning Plaintiff's use of' the assistive device." *Figueroa v. Kijakazi*, No. 1:22-CV-194, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023) (quoting *Steward v. Comm'r of Soc. Sec.*, No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009)). "[T]he failure to do so may require a remand." *Id*. (citations omitted).

In the present case, Dr. Kruger, Plaintiff's treating physician, observed on May 25, 2017, that Plaintiff had decreased range of motion of his lumbar spine with paraspinal muscle spasm and concluded that a "[c]ane provided [] gait support." R. 1001; *see also* R. 1000 (reflecting "Review of Systems," noting, *inter alia*, that Plaintiff is "[u]nable to stand erect without worsening muscle spasm. Using cane support helps with ambulation"). That same day, Dr.

15

Kruger prescribed a cane due to Plaintiff's abnormalities of gait and mobility and dorsalgia. R. 1003. Stated differently, Dr. Kruger did not simply prescribe a cane with no discussion to support that prescription. *Cf. Howze*, 53 F. Appx at 222.

In concluding that there was "no indication in the record that" Plaintiff's use of a cane was medically necessary, the ALJ erroneously found that there was no prescription for a cane. R. 43. While the Acting Commissioner urges this Court to find that error to be harmless, a fair reading of the ALJ's opinion persuades this Court that the ALJ relied, at least in part, on that misunderstanding when finding that Plaintiff's use of a cane was not medically necessary. *Id*. ("Again, his physical examinations repeatedly show that he has tested as having a normal gait ***and*** *there is no mention of a prescription for a medically necessary cane in the record.* Therefore, it is unclear why the claimant would need a cane to ambulate since his pain was often stable and he has persistently tested as having a normal gait.") (emphasis added). Based on this record, the Court cannot separate the ALJ's mistaken belief that the record contained no prescription for a cane from her other reasons for finding that a cane was not medically necessary. *Id*.; *see also Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (providing that an ALJ may not reject evidence for no reason or the wrong reason").

Moreover, it is unclear to what extent this error infected the ALJ's determination of Plaintiff's RFC. R. 39, 43. Thus, the Court cannot meaningfully review the ALJ's RFC finding and determine whether substantial evidence supports that finding at step four. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may

determine whether substantial evidence supports the ALJ's RFC analysis."). For example, the ALJ found that Plaintiff was able to perform his past relevant work as a chauffeur and did not require the performance of work-related activities precluded by that RFC. R. 44–45. However, the vocational expert testified that the Plaintiff's past relevant work as a chauffeur would be precluded if Plaintiff needed a cane. R. 79–80.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[5] Moreover, remand is appropriate even if, upon further examination

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's use of a cane and the RFC determination, the Court does not consider those claims. However, the Court notes that this Court has previously rejected one of Plaintiff's counsel's arguments, *i.e.,* the constitutionality of the appointment of the Acting Commissioner. *See Rebecca L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-13848, 2022 WL 3025908, at *13–14 (D.N.J. July 31, 2022) ("Accordingly, Plaintiff has not alleged any connection between the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision denying Plaintiff benefits, and nothing commands us to vacate the decisions below on that ground. . . . Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to remand or reverse the ALJ's decision absent a showing of compensable harm.") (internal quotation marks and citations omitted). This Court has also previously rejected similar constitutional challenges to the Acting Commissioner's appointment raised by other counsel. *See John G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-17256-NLH, 2022 WL 3678108, at *10–12 (D.N.J. Aug. 25, 2022) ("The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid."); *Sheree J. v. Kijakazi*, No. 1:21-CV-05477-NLH, 2022 WL 3211415, at *8–11 (D.N.J. Aug. 9, 2022) (same); *Daniel M. v. Comm'r of Soc. Sec.*, No. CV 21-10533 (RMB), 2022 WL 2952912, at *5–7 (D.N.J. July 26, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision.") (internal quotation marks and citations omitted); *Margaret S. v. Kijakazi*, No. CV 21-13556 (SDW), 2022 WL 2753475, at *8–9 (D.N.J. July 14, 2022) ("Plaintiff has offered no evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal restriction caused the denial of her benefits claim or affected the determination of her benefits in any way. . . . As such, further consideration from this Court on Plaintiff's 'separation of powers' argument is not necessary. Accordingly, the final decision of the ALJ is not constitutionally defective and remand is not warranted."); *Kwasnik v. Kijakazi*, No. 3:21-CV-08573, 2022 WL 2358424, at *8–11 (D.N.J. June 30, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision."); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to

of Dr. Kruger's prescription for a cane, and of his reasons for that prescription, and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.  CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  May 12, 2023                                         *s/Norah McCann King*
                                                            NORAH McCANN KING
                                                            UNITED STATES MAGISTRATE JUDGE

---

any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case.").